[S. F. No. 20989.   In Bank.   May 29, 1962.]

LAWRIENE   TUCKER,   Plaintiff   and   Respondent,   v.
BERTHA ALICE LANDUCCI, Defendant and Appellant.

McCormick, Barstow, Sheppard & Coyle and Hollis G. Best for Defendant and Appellant.

Miles, Sears & Franson, Robert E. Sears, Avery, Meux & Gallagher and Kendall L. Manock for Plaintiff and Respondent.

SCHAUER, J.—Defendant Bertha Alice Landucci, hereinafter called defendant, appeals from a judgment entered upon a jury verdict in favor of plaintiff, in an action to recover for personal injuries sustained when plaintiff was riding in an automobile driven by defendant.[1] Plaintiff bases her action on two separate theories: (1) that she was a passenger for consideration in defendant's automobile; and (2) that defendant was guilty of wilful misconduct. Defendant, although conceding her simple negligence, contends that the evidence is insufficient to support a recovery upon either theory. For reasons hereinafter stated, we have concluded that the judgment should be upheld upon the theory that plaintiff was a passenger.

The collision in which plaintiff was injured occurred on August 8, 1959, in the City of Fresno, California. At that time plaintiff, defendant, and one Mrs. Castle, were employes of Rhodes Department Store in Fresno. Plaintiff was assistant buyer of the ladies' ready to wear department; defendant was a saleslady in another department, known as the junior wear, which was supervised by an assistant buyer named Mrs. Abbott; and Mrs. Castle was the chief buyer or manager over both of these departments.

During working hours on the day of the accident, a Saturday, Mrs. Castle had accepted defendant's invitation to take her to dinner and had suggested that plaintiff be included, to which defendant agreed. Prior to closing time on the same day Mrs. Castle invited plaintiff and Mrs. Abbott to go to a cocktail lounge across the street from Rhodes, and to have a drink to celebrate both plaintiff's and Mrs. Abbott's birthdays.

About 6 p. m., just after closing time, Mrs. Castle, Mrs. Abbott and defendant went to the cocktail lounge where they were joined a short time later by plaintiff after she had finished her duties at the store. While having two or three

---

[1]The verdict was also rendered, and judgment entered, against defendants Hansen and Coletti, the driver and the owner, respectively, of the automobile with which defendant Landucci's automobile collided. Hansen and Coletti did not appeal.

drinks at the cocktail lounge a discussion arose concerning a fashion show which was to be held at the store the following Monday. Mrs. Castle was in overall charge of the show and was to act as commentator, and plaintiff was to participate in the show and also to conduct it from backstage. Plaintiff had worked with Mrs. Castle on preceding fashion shows for Rhodes.

Mrs. Castle and plaintiff had previously arranged to meet the following day, Sunday, to plan and prepare for the fashion show. Defendant was not a principal in the fashion show, but it was understood that as a saleswoman in the store she would be expected to give incidental help to it and, if necessary, do anything that was required in the way of assisting the models.

During the discussion at the cocktail lounge Mrs. Castle suggested ''Why don't we discuss this [the show] over dinner.'' Plaintiff said she would go with them after she canceled other plans and took her car home. It was agreed that defendant and Mrs. Castle would pick up plaintiff at the latter's home in defendant's car. There was no specific reason why the defendant's car was used; it apparently resulted from a suggestion by Mrs. Castle, who had no car. There was no discussion between the three women as to who was to pay for the dinner.

After plaintiff was picked up at her home, at about 8:30 p. m., the three women started for a restaurant in defendant's car. En route, at the intersection of Olive Avenue and Marks Avenue just outside Fresno, defendant's vehicle collided with a car driven by one Hansen. (See fn. 1, *supra*.) Olive Avenue, on which Hansen was traveling, is a through street, and at this particular intersection there was a reflectorized stop sign for traffic using Marks Avenue, on which defendant and her two companions were traveling. The sign was clearly visible at the time of the accident for a distance of several hundred feet.

Mrs. Castle was killed in the accident. At the time of trial plaintiff, defendant, and Hansen, who survived the accident, claimed that they were suffering from retrograde amnesia and were unable to recall the circumstances of the collision. However, a highway patrol officer called to the scene testified that in an interview at the hospital shortly after the accident Hansen stated that he was eastbound on Olive Avenue at a speed of about 35 miles an hour when he saw the other car

come from his left and run through the stop sign at a speed of about 35 miles an hour; that at the time of making these statements Hansen appeared to be drowsy and sleepy, but did answer the specific questions asked of him by the officer. No other eyewitnesses to the collision were produced.

Other evidence as to the actual collision had to do with the probable area of impact of the two colliding vehicles, the course they thereafter followed before coming to rest, and their physical conditions after the collision.

Previous social contacts between plaintiff, defendant and Mrs. Castle had apparently been limited to those customary among employes in a modern department store. Mrs. Castle had once been to lunch with defendant and had once been to defendant's home for a potluck party when Mrs. Castle was leaving on a trip to New York. The party was attended by employes of Rhodes, including plaintiff, who worked in Mrs. Castle's departments. Plaintiff had also once attended a shower for a fellow employe, held in defendant's home. Other than these occasions the three women had not "been in each other's homes." Both plaintiff and defendant addressed Mrs. Castle formally as "Mrs. Castle," rather than by her first name, although Mrs. Castle called defendant "Bertha." Defendant stated she considered Mrs. Castle "a close friend," but testified further that the matter of taking her to dinner on the day of the accident came up "Because Mrs. Castle was our boss, our buyer, . . . and she was leaving for New York shortly" on a buying trip.

Both plaintiff and defendant testified that the recommendation of Mrs. Castle would be important with respect to a transfer between departments or their advancement at Rhodes. Plaintiff stated further that a discussion with Mrs. Castle concerning the style show would provide information about the "styles and the garments and things" which would be beneficial to a saleslady on the floor (such as defendant) as well as to plaintiff as an assistant buyer; that defendant was "supposed to be one of the very best [salesladies] that Rhodes had"; that in agreeing to Mrs. Castle's suggestion that the three women discuss the style show over the Saturday evening dinner plaintiff hoped that the time she would "have to spend on it on Sunday" would be shortened.

Section 17158 (formerly § 403) of the Vehicle Code provides in material part that "[n]o person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil

damages against the driver of the vehicle . . . on account of personal injury to . . . the guest during the ride, unless the plaintiff in any such action establishes that the injury . . . proximately resulted from the intoxication or wilful misconduct of the driver.''

It is at once apparent that, as in *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 368-369 [6] [317 P.2d 601], the jury in the case at bench could and should have determined that plaintiff was a passenger for consideration in defendant's car and that such conclusion flows from facts as to which there is no substantial dispute. The whole tenor of the testimonies of both plaintiff and defendant establishes that the association between plaintiff, defendant, and Mrs. Castle was based primarily upon their relationship as employes of Rhodes. Defendant suggested taking Mrs. Castle to dinner on the day of the accident because ''Mrs. Castle was our boss, our buyer,'' and plaintiff consented to be included at the suggestion of Mrs. Castle that the three women discuss the style show over dinner —a benefit to both plaintiff and defendant which plaintiff hoped would further permit her to spend less of her Sunday time on that project of her employment. Defendant's further statement that she invited Mrs. Castle to dinner because she was a friend does not lessen the force of the employment relationship. The situation thus plainly meets the tests of ''motivating influence'' and of ''tangible benefit'' laid down in *Gillespie* and in the numerous cases there cited. (*Gillespie* v. *Rawlings* (1957), *supra,* 49 Cal.2d 359, 364-367 [1-3].)

As there summed up, quoting among other cases from *McCann* v. *Hoffman* (1937) 9 Cal.2d 279, 286 [70 P.2d 909], ''[W]here the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest.'' (P. 366 [2] of 49 Cal.2d.) Defendant's reliance, in oral argument before this court, upon *Nault* v. *Smith* (1961) 194 Cal.App.2d 257, 261-264 [1-3] [14 Cal.Rptr. 889], is thus misplaced, as no employment relationships or considerations were shown in that case.

Under the circumstances of the case at bench, as in *Gillespie* (p. 369 [6] of 49 Cal.2d), any error in submitting to the jury the issue of wilful misconduct could not have prejudiced defendant. Consequently no useful purpose would be served by determining whether, as contended by defendant,

such submission actually did constitute error in the light of the evidence presented by the parties.

The judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.