[Civ. No. 20104. First Dist., Div. Two. June 18, 1962.]

BEAB, INC., Plaintiff and Respondent, v. FIRST WEST-ERN BANK AND TRUST COMPANY et al., Defendants and Appellants.

Burnstein, Abramovitz & Starr, Robert C. Burnstein, Marvin B. Starr, MacDonald, Brunsell & Walters and Clayton Brunsell for Defendants and Appellants.

Fred F. Cooper for Plaintiff and Respondent.

KAUFMAN, P. J.—This is an appeal by the defendant,[1] United California Bank (formerly First Western Bank and Trust Company, and hereafter referred to as "First Western"), from a judgment in favor of the plaintiff, Beab, Inc., the purchaser of the dominant tenement, decreeing that the plaintiff was entitled to a nonexclusive perpetual easement appurtenant and right-of-way for pedestrian and vehicular traffic over LaPlaya Avenue (previously known as Avenue "A") in the Palma Ceia Village in Hayward, and enjoining any interference by First Western with this easement, as well as three other easements described in the deed to the plaintiff from the defendants, A. L. Branden and Veryl M. Branden (hereafter referred to as "the Brandens"), who also subsequently conveyed the servient tenement to First Western.

The only contentions on appeal are that the trial court committed certain errors prejudicial to the defendants by: (1) permitting the amendment to the complaint and finding that specific performance of the 1958 agreement between the plaintiff and the Brandens was an issue properly before the court; (2) finding that it was the intention of both plaintiff and the Brandens to include an unrestricted easement of ingress and egress over LaPlaya Avenue; and (3) finding that First Western was not a bona fide purchaser for value of the property transversed by LaPlaya. There is no merit in any of these contentions.

The trial court found the facts to be as follows: On October 24, 1958, Beab, Inc., and the Brandens entered into a written contract for the conveyance of a parcel of land; that the contract provided for a cash downpayment of $40,000 and an additional $40,000 in installments evidenced by a note secured by a deed of trust; and the written agreement also expressly provided for the conveyance of three access easements to Avenue "A" for pedestrian and vehicular traffic; and for the sellers' maintenance of Avenue "A"; and that the sellers would landscape a 10-foot strip between Avenue "A" and the parcel conveyed to the plaintiff. The court found that the contract was uncertain as to the location of the access easements but that this uncertainty was removed by an actual

---

[1]The record indicates that the initial notice of appeal was filed by the attorneys for both defendants. Subsequently, only First Western filed an opening brief and the Brandens adopted this brief, January 15, 1962. The plaintiff also filed a notice of appeal from the amendment to the judgment, but later abandoned it, and plaintiff's appeal from amendment was dismissed by this court on January 17, 1962.

conveyance thereof by the Brandens to the plaintiff on September 21, 1959.

The trial court also found that the above agreement was ambiguous and uncertain as to the intention of the parties to include an easement over Avenue "A," but that the parties did intend to grant to the plaintiff an easement over Avenue "A" to be nonexclusive and appurtenant to the property described in the deed from the Brandens to the plaintiff dated October 20, 1958, and recorded January 6, 1959.

The court further found that before the execution of the contract of October 1958, Avenue "A" was an improved private road on the Branden property, in daily use by members of the general public and was the only Avenue "A" then transversing land owned by the Brandens. Avenue "A" was particularly described in documents on file with the City Engineer of the City of Hayward and an easement over Avenue "A" held by Sears Roebuck Company was on file with the County Recorder of Alameda County. The location of Avenue "A" was clearly visible on the land and its boundaries were then, as now, generally known and well defined. Subsequent to the execution of the written agreement of October 1958, between plaintiff and the Brandens, Avenue "A" became known as LaPlaya Avenue. The Brandens had used LaPlaya Avenue prior to their conveyance to the plaintiff, and the use of LaPlaya is reasonably necessary for the convenient and comfortable use of the land of plaintiff.

The trial court also found that in December 1959, when the Brandens conveyed their parcel of land crossed by LaPlaya to First Western (who took title as agent and trustee for Abner J. Mesirow, and others), the knowledge of these parties as to plaintiff's rights was attributed to First Western. The trial court further found that prior to the conveyance to First Western, First Western was in possession of sufficient facts as to plaintiff's rights to put a reasonable man on inquiry and that, therefore, First Western was not a bona fide purchaser for value without notice of plaintiff's rights and that a reasonable diligent inquiry would have disclosed plaintiff's rights.

The trial court further found that the plaintiff had performed all of its obligations under the contract and that on or about September 21, 1959, the Brandens conveyed the access easements to LaPlaya but the Brandens had defaulted in their obligation to also convey the easement over LaPlaya.

The trial court also found that the landscaping covenants contained in the deed from the Brandens to the plaintiff were

personal covenants not running with the servient tenement and, therefore, not binding on First Western; that the service station restriction in the deed from the Brandens to the plaintiff was a valid and binding personal convenant between the parties to the deed which could be enforced only by the Brandens against the plaintiff only.

The only issues on this appeal relate to the trial court's findings with respect to the plaintiff's easement over LaPlaya. As indicated above, the first contention on appeal is that the trial court erroneously permitted the amendment to the complaint in finding that specific performance of the agreement of October 24, 1958, was an issue properly before the court. This argument is based on the fact that plaintiff's original complaint filed January 21, 1960, was for declaratory relief and damages for breach of the 1959 agreement conveying the three access easements. However, the cross-complaint of First Western prayed for reformation of the deed and for an injunction against the plaintiff's use of the property acquired from the Brandens for other than multiple dwelling development and operation, which the cross-complaint alleged was embodied in the 1958 agreement. The pretrial statement adopted by the pretrial conference order set forth that the action was based on a written grant of easements from the Brandens dated September 21, 1959, the nature and extent of the easement conveyed on that date, whether the other defendants had knowledge of the full extent of the easements at the time they purchased their parcel of property from the Brandens, the rights and duties of the parties, plaintiff's right to reform the easement on the ground of mutual mistake and whether plaintiff had agreed with the Brandens to restrict use of the property purchased from them to multiple dwelling purposes only.

The record, however, indicates that several weeks before trial, plaintiff informed defendant, First Western, of its intention to make specific performance of the 1958 agreement an issue and the matter was described at various stages during the trial. The motion to amend was made prior to the termination of the trial and at the time the lower court granted the motion to amend to set forth specific performance, the court informed the defendants that it would entertain their motion to reopen to offer evidence on the issues presented by specific performance. Defendants moved to strike portions of the amendment but did not request either a continuance or reopening of the case.

■ The trial court has the discretion to permit amended pleadings to conform to proof adduced at the trial. Defendants rest a claim of prejudicial error upon the action of the trial court in permitting respondent over objection, to file an amended complaint to conform to proof after the trial had been concluded. ■ Conceding that the amended complaint raised issues not framed by the original pleadings, it did plead issues raised by the evidence and which were treated as such during the trial. The granting or denial of permission to file amendments to pleadings to conform to proof rests largely in the discretion of the trial court. The reason therefor is obvious and is intended to insure, as far as possible, that substantial justice is done by a liberal construction of the rule. When the amended complaint filed herein is compared with the evidence adduced at the trial, we are satisfied that there was no abuse of discretion (*Nevarez* v. *Nevarez*, 202 Cal.App.2d 596 [21 Cal.Rptr. 70], at p. 600).

Defendants' reliance on cases holding that the pretrial order controls the trial unless modified at or prior to trial, is not well taken here. Furthermore, the defendants have shown no prejudice whatsoever to them from the amendment. The documents comprising the 1958 contract were placed into evidence without objection. The only evidence in support of specific performance to which the defendants objected was the evidence as to reasonableness and adequacy of consideration. Also, defendants themselves placed the 1958 contract in issue by their cross-complaint which sought to enforce a restriction allegedly embodied in the 1958 contract. Thus, the only new issue raised by the amendment was the matter of adequacy of consideration. ■ Adequacy of consideration need not be proved where the defendant has already accepted the consideration. ■ There is, therefore, no merit in the defendants' first contention.

The next major contention on appeal is that the trial court erred in its finding that the plaintiff was entitled to an unrestricted easement over LaPlaya Avenue. There is no merit to this argument as the record amply sustains the findings of the trial court. Defendants' argument is based on the fact that prior to the plaintiff's purchase of the servient tenement, the Brandens in their negotiations with one Robert Gross, a potential purchaser, requested a warranty that the property would be used only for multiple-unit apartments.[2] Gross signed a

---

[2] A letter from the Brandens' attorney to Gross contained the following: "The purchaser is to *warrant* that they intend to build multiple

deposit receipt on August 8, 1958, and placed $5,000 in escrow, but the Gross transaction was never completed. Subsequently, the Brandens decided they wanted to add another restriction relating to the exclusion of a gas station.

 After further conversations and negotiations, the plaintiff was incorporated to become the buyer in place of Robert Gross. Thereafter, on October 24, 1958, Arch Mac-Donald, the attorney and agent for the Brandens in this transaction, prepared a series of documents for the Brandens: Exhibit 7, the Brandens' instructions to the title company for the sale to Beab, Inc.; Exhibit 9, which contains the restriction to the gas station; and Exhibit 8, the center of the controversy between the parties, which is a letter dated October 24, 1958, from Branden Enterprises under the signature of A. L. Branden, as follows:

"Mr. Robert Gross
c/o Sol Gilberg[3]
359 15th Street
Oakland 12, California

*"Re: 4 Acres located next to Palma Ceia Shopping Plaza*

"Dear Sir:

"In addition to the escrow instructions with California Pacific Title Insurance Co. in Oakland, Escrow #555731, involving the sale and purchase of land described in said escrow, it is further understood as follows:

"1. The 10' strip between the shopping center Avenue 'A' and the property line of the property involved in said escrow, is to be landscaped by the undersigned in connection with the development and improvement of the shopping center.

"2. Avenue 'A' is being partially completed by the undersigned at this time but when Avenue 'A' is fully completed, there will be curbs and gutters installed along the Southerly side of said street.

"3. The earth presently stockpiled on said 4 acre parcel will be removed to the natural contour of the ground. This removal will be done by the undersigned at no cost to Pur-

unit apartments on the property and the deed will contain a clause to the effect that if this use is violated the land will *revert to the sellers.* The purchaser will be permitted four (4) entrances to the land in the private road located on the southerly side of the Palma Ceia Shopping Plaza. . . . Accordingly, purchaser will have access to the land over one-half of the improved private road. . . .'' [Emphasis added.]

[3]Gilberg at this time was the real estate agent acting for Gross.

chaser and will be done in time so as not to interfer [*sic*] with Purchaser's use of the property.

"4. Avenue 'A' in the shopping center will be maintained by the undersigned.

"5. The undersigned agrees to grant to Purchaser not more than 3 rights-of-way for egress and ingress over a 10' strip of land between the South side of A Street and the property line of Parcel 1 as described in the deed of trust executed by Purchaser in favor of Seller. The location of the 3 points for egress and ingress to said parcel 1 will be agreed upon and fixed between the parties hereto. It is understood that Purchaser contemplates building apartment units on said parcel of land and desires access to Avenue 'A'. The cost of improving the rights of way to Avenue 'A' shall be paid by Purchaser.''

There is no question that Exhibits 7, 8 and 9 constituted an offer to sell which was accepted by the plaintiff when it placed cash and the buyer's instructions in escrow and four acres were subsequently conveyed. The access rights to Avenue "A" (later LaPlaya) were not conveyed at this time but conveyed by the deed of September 21, 1959. When, in January, 1959, plaintiff attempted to obtain multi-residential zoning on the property it had purchased from the Brandens, it was turned down by the Planning Commission of the City of Hayward. As the property could not be used economically for single-family residential purposes, plaintiff decided to develop the property commercially. The Brandens knew of these plans in September, 1959, when the three access easements were conveyed to the plaintiff.

At the time the three access easements were conveyed, plaintiff understood they were intended to include the right to use LaPlaya Avenue. Three months after the grant of these three access easements to the plaintiff, the land over which LaPlaya Avenue passes was conveyed to First Western as the trustee for the Mesirow group. From these facts, the trial court could properly conclude that the parties intended to include an unrestricted easement of ingress and egress to plaintiff over LaPlaya Avenue. In fact, any other conclusion is a violation of common sense because there would be no point in the three access easements to LaPlaya for pedestrian and vehicular traffic if the users of the easements could not also cross LaPlaya once they had arrived there.

There is no evidence to support the defendants' contentions that the easements given to the plaintiff over LaPlaya

should be restricted to use of the servient tenement for residential purposes only. The letters written by the attorney for the Brandens indicate that during the earlier negotiations with Gross, the purchaser was to *warrant* this restricted use but the subsequent letter of October 24, 1958, which is the only one truly relevant to the transaction here involved and which was incorporated into the final contract, merely stated that ''It is understood that the purchaser *contemplates* building apartment units on said parcel of land. . . .'' [Emphasis added.] Furthermore, as indicated above, the Brandens conveyed the access easements long after they became aware of plaintiff's intention to develop the property commercially. ██ ''When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent.'' (*Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 754 [8 Cal.Rptr. 427, 356 P.2d 171].) There is, therefore, no merit in the defendants' second contention.

██ The final contention on appeal is that the trial court erred in finding that First Western was not a bona fide purchaser without notice of plaintiff's unrestricted easements over LaPlaya Avenue. The trial court based its decision on section 19 of the Civil Code, which provides: ''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.'' The uncontroverted evidence established that early in 1959, prior to the sale to Mesirow, MacDonald and the Brandens learned of the plaintiff's plans to develop the four acres commercially, both directly, and through Gilberg, who at this time was the agent. The Mesirow group and Gilberg had actual knowledge of plaintiff's claim from Friedland and in a letter from plaintiff's attorney, three months before the purchase by the Mesirow group. Furthermore, Mesirow, who did the negotiating for the Mesirow-First Western group, had actual notice, both from Gilberg and MacDonald of plaintiff's claim to use LaPlaya and over the dispute between the Brandens and the plaintiff. The uncontroverted evidence indicates that Mesirow made no investigation other than to accept MacDonald's assurance that the plaintiff's claims were unsupportable. Furthermore, the county recorder's records prior to the sale to the Mesirow-First Western group, showed that in September 1959, the access easements had been conveyed by the Brandens

to the plaintiff. ■ It is well established that knowledge by notice to attorney or counsel or agent acquired during the negotiations for purchase is constructive notice to the principal (*Early* v. *Owens*, 109 Cal.App. 489 [293 P. 136]).

This is a fact case. The facts as found by the trial court are supported by the evidence and the findings support the judgment. No prejudicial error appears in the record before us.

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 15, 1962.