[Civ. No. 102. Fifth Dist. Nov. 7, 1962.]

PAUL POSZ, Plaintiff and Respondent, v. IRVIN M.
BURCHELL et al., Defendants and Appellants.

Robert O. James, Zeff, Halley & Price, E. Dean Price, Badger & Mower and James P. Mower for Defendants and Appellants.

McVay, Stone & Reid and Norman S. Reid for Plaintiff and Respondent.

CONLEY, P. J.—All of the defendants appeal from a judgment against them based on a jury verdict in favor of plaintiff, Paul Posz, in the sum of $32,324.61 growing out of the sale to plaintiff of boysenberry plants, three-quarters of which died. The complaint as amended is based on theories as to all defendants of express warranty, implied warranty and negligence. The verdict and the judgment specify as defendants Irvin M. Burchell, doing business under the name and style of The Burchell Nursery, Irvin M. Burchell, individually and doing business as The Burchell Nursery (both hereinafter

referred to as Burchell), Carl W. Muller and George Murphy, individually, and doing business under the name and style of Muller & Murphy Berry Farms, a copartnership, and Muller & Murphy Berry Farms, a copartnership (hereafter referred to as Muller & Murphy). The nurseryman, Burchell, who sold the boysenberry vines to the plaintiff, and Muller & Murphy, the growers of the vines, appeal separately from the judgment.

The first cause of action in the second amended complaint alleges that the plaintiff ordered 58,000 boysenberry vines and that defendants both expressly and impliedly warranted them to be of merchantable quality and reasonably fit for the purpose intended and to be in good growing condition when delivered; that during the month of April 1954, approximately 58,000 vines were in fact delivered to plaintiff, for which he paid the sum of $4,930; that the vines when delivered were in an apparently dormant state and that plaintiff had no means of then knowing whether they were as warranted. The pleading continues by alleging that these vines were planted on 40 acres of plaintiff's land and that approximately 40,270 of the vines did not grow because they were not in good growing condition at the time of delivery and were not of merchantable quality or reasonably fit for the purpose for which intended. The plaintiff alleged damage in the sum of $3,422.99 as the purchase price of these vines which did not grow, $102.69 as the California sales tax, $60.47 as the purchase price of cartons in which the vines were packed, $40.27 as storage charges, the sum of $3,626.42 as damages as the direct and proximate result of their failure to grow. Plaintiff also claimed damage in the sum of $5,500 as the cost of preparing the land and the planting of the berry vines, $4,500 as the amount spent in later consolidating the planting of the vines which did grow, the sum of $28,254 as losses in gross production reasonably to be anticipated in the year 1955 and for further losses in crop production in the years 1956 and 1957 of $33,830.

A second cause of action alleged negligence on the part of all defendants because of the "careless, reckless and negligent manner in the planting, growing, caring for, storing, selecting and shipping" of the boysenberry vines to the damage of plaintiff in the sum of $75,710.42.

On the first day of the trial plaintiff asked leave to file amendments to the second amended complaint. The new amendments changed the legal theory behind the first cause

of action in a rather important particular, left the second cause of action in substantially its original condition, and added a third cause of action.

The first cause of action of the second amended complaint, as changed by the amendments, eliminated an allegation that Muller & Murphy were agents of Burchell; the pleading as changed alleged that on or about March 5, 1954, plaintiff advised Burchell at his place of business in Stanislaus County that he was contemplating planting in excess of 40 acres of land in Colusa County to boysenberry vines for the purpose of raising, growing and producing boysenberries on a commercial basis; that he further told Burchell that he was personally inexperienced in the growing, harvesting and marketing of boysenberries and that he desired expert advice on the advisability of entering upon such a venture and that he solicited all information which the nurseryman could furnish on the proper methods of planting, caring for and harvesting boysenberries; that in response to such inquiries Burchell advised plaintiff that he did not personally raise boysenberry vines in the quantities requested but that he would procure all boysenberry vines which plaintiff might desire to buy from another grower and would secure the information plaintiff required concerning the raising and harvesting of boysenberries; that pursuant to this offer plaintiff and defendant Burchell entered into an oral agreement wherein plaintiff promised to buy any and all boysenberry vines which he might thereafter require for his contemplated commercial berry growing operations through the agency of the defendant Burchell and that Burchell would act as plaintiff's agent in procuring a supply of suitable boysenberry vines; that defendant Burchell and plaintiff contacted Muller & Murphy and sought their advice on the proposed boysenberry operation; that Muller & Murphy told plaintiff that conditions were favorable for growing boysenberries commercially on plaintiff's land and further advised plaintiff that they would furnish him with all the young boysenberry vines that he required for said purpose; that Burchell also offered expressly to warrant on his own behalf all boysenberry vines procured from Muller & Murphy and that such warranty would be that they would be in good growing condition at the time of delivery. The pleading continues by alleging that as a result of said "advice, representations, guarantees and warranties" the plaintiff ordered from Muller & Murphy approximately 58,000 boysenberry vines,

which defendants agreed to and did sell and deliver to plaintiff in the County of Colusa during the month of April 1954.

"Pursuant to this agreement, plaintiff promised to and did order the said vines and pay therefor by and through the agency of defendant, IRVIN M. BURCHELL, and said agent gave plaintiff his express warranty in writing that said vines were in good growing condition at the time said vines were delivered to plaintiff pursuant to the said agreement."

The pleading, as amended, alleges damages as set forth in the second amended complaint.

The second cause of action, based on the alleged negligence of all the defendants, is substantially the same as in the second amended complaint already reviewed.

The new third cause of action incorporates by reference much of the first cause of action, as amended, and continues by alleging that in March 1954 plaintiff entered into an oral agreement with defendants:

". . . wherein and whereby plaintiff agreed to purchase approximately 58,000 young boysenberry vines from the defendant, IRVIN M. BURCHELL. Pursuant to this agreement, defendants, CARL W. MULLER and GEORGE MURPHY, promised to select the required number of boysenberry vines from their own vineyards and to sell the same to defendant, IRVIN M. BURCHELL, for the purpose of resale to plaintiff. Defendant, IRVIN M. BURCHELL, furthermore agreed to buy the required number of vines from defendants, CARL W. MULLER and GEORGE MURPHY, and to resell the same to plaintiff at an agreed upon price."

The third cause of action continues by alleging that before entering into the oral agreement, above alleged, plaintiff ". . . informed defendants, and each of them, that he desired the specified vines for the purpose of planting them on the land referred to in paragraph I . . . and that he intended to raise, grow and produce boysenberries therefrom on a commercial basis."

"Said defendants represented, warranted and promised that if plaintiff purchased boysenberry vines which were grown and selected by defendants, CARL W. MULLER and GEORGE MURPHY, and sold to him by defendant, IRVIN M. BURCHELL, that said vines would be in good growing condition when delivered to him in Colusa County, California, and that they would be suitable for the purpose specified by plaintiff. In reliance upon these representations, warranties and promises,

plaintiff entered into the agreement specified in paragraph II above.''

The third cause of action continues by alleging that in March and April 1954 plaintiff ordered 58,000 boysenberry vines from Burchell and agreed to pay therefor pursuant to the agreement. It is then alleged that the vines were delivered to plaintiff in Colusa County and were grown and selected for sale by the defendants Muller & Murphy. Damages as set forth in the second amended complaint are asked for.

The evidence shows that in June of the year 1953 the plaintiff, Paul Posz, bought about 50 acres of land in Colusa County, a portion of which had been previously planted to barley and prunes. Plaintiff had never personally engaged in farming; advised by a friend, Richard Gimlen, he removed the prune orchard, leveled the land, drilled a well to provide irrigation, and discussed with others the kind of crop he should plant. He talked with Burchell at his nursery in Stanislaus County and told him of his decision to plant boysenberry vines. Burchell in turn referred Mr. Posz to Muller & Murphy, growers of berry vines. They conferred several times with respect to berry production and the acquisition and care of plants. Among the matters talked about by Mr. Posz and Mr. Gimlen on the one hand and Mr. Muller and Mr. Murphy on the other, was the lateness of the season. The growers said that in the Modesto area they considered an absolute deadline for planting to be the end of March; the difference between the seasons from the weather standpoint in central and northern California was discussed, and it was decided that if the vines were planted after the first of April it might be all right for the northern area.

It appears from the record that Muller & Murphy were eager to know if the plants actually were to be ordered, because it would require considerable work on their part to dig as many boysenberry vines as Mr. Posz would require to plant on his land. Mr. Gimlen testified that Muller & Murphy said the plants would be dug and would be placed in cold storage and that such storage was common procedure. Gimlen and the plaintiff both testified that every effort had been made to prepare the ground in advance for the planting of the vines and that on March 27 an order was placed by telephone with defendant Burchell for the vines; The Burchell Nursery wrote up the order on its form entitled ''Contract for Sale of Nursery Stock,'' which contained the following warranty over its signature: ''WARRANTY: The seller hereby warrants

that all trees and vines delivered under this contract shall be in good growing condition.''

The record shows that on the first day of delivery of the vines it started to rain in the afternoon and that Gimlen arranged for the storage of most of these vines in Colusa at the Colusa-Fresno Feed Storage Company; they were planted after about three days. About the middle of March plaintiff had hired a Mr. Burkhart, upon the recommendation of Muller & Murphy, who assisted plaintiff with the preparation of the ground and carried on the supervision of the actual planting. Two subsequent deliveries of vines were made, on April 10 and April 17. An invoice of The Burchell Nursery accompanied each of the three increments of delivered vines, and it had printed thereon the following warranty: ''We guarantee all trees and vines to be in good growing condition when delivered.''

Plaintiff testified that during the plantings irrigation was going on regularly and that some water was put on the plants each week, they being watered from tanks and trucks; the first pump irrigation was finished approximately two weeks after planting. Many dead vines were in the field after the original planting, and ultimately 75 or 80 per cent of the entire field was found to be dead. These vines were not concentrated in any particular area of the 40 acres, and plaintiff testified that the plants had never shown any life. When the death of so many of the vines became obvious, Messrs. Burchell, Muller and Murphy were called on the telephone, and Mr. Murphy came to the ranch. The living vines were replanted to consolidate them in one section of the acreage; these transplants lived and produced a crop in 1955.

In 1955 plaintiff ordered more berry vines from Muller & Murphy and completed the planting of the entire field. These latter plants did not come from cold storage, plaintiff having insisted that they be dug fresh the day they were picked up and transported. In September of 1955, Muller & Murphy filed an action in the Municipal Court for the Modesto Judicial District against Posz, seeking therein the recovery of the balance of the purchase price due from Posz to Muller & Murphy on the sale of these replacement vines. Thereafter, Posz paid Muller & Murphy the full amount of the balance due as claimed in the suit, and a dismissal was entered with prejudice.

Both appellants complain bitterly that on the first day of the trial the court permitted an amendment of the second

amended complaint. It is somewhat unusual that a major amendment should be requested on the day of the trial itself after the case was pending for almost five years, but this comment is not equivalent to a statement that there was any showing of reversible error by reason of the ruling of the trial court. The policy of our law is to allow great liberality in amendment of pleadings prior to trial and even during the trial itself so that questions litigated between parties may be decided on the merits.

 In this case, as we have seen from our review of the second amended complaint, the plaintiff sued all of the defendants on theories that they were liable on warranties, express and implied, and because of their negligence in the handling, storage, transshipment and care of the boysenberry vines. The amendments proposed and accepted by the trial court on the day of the trial did not in essence change the general charges made by the then pending pleading. The major change was an abandonment of that portion of the first cause of action in the second amended complaint which alleged that Muller & Murphy were agents of Burchell in connection with the transaction. The amendment of the pleadings, therefore, did change the alleged position of Muller & Murphy with respect to the express and implied warranties; if the original allegations had been proven, Muller & Murphy could not have been held liable on contract as agents of a disclosed principal. (*Hayman* v. *Shoemake,* 203 Cal.App.2d 140, 159 [21 Cal.Rptr. 519].) However, it should be kept in mind that this change of position as to legal responsibility would not effect any difference in the proof. The same evidence presumably was adduced upon the trial with the amendments allowed as would have been offered if the amendments had not been made. The change was one of legal theory only. It should be further noted that the allegations of agency contained in the original pleading were denied by Muller & Murphy in their answer so that it was never admitted by them that they were in fact agents of Burchell; in other words, they never contended that they should escape liability on the premise that they were merely agents of a disclosed principal.

Furthermore, it is apparent from the transcript of the proceedings leading up to and following the allowance of the amendment that counsel for the appellants did not vigorously press their request for the privilege of demurring or moving to strike after the court allowed the amendment. It is true that the suggestion was made during the debate on the subject

that there should be a chance to demur or move to strike, but after the ruling itself no such request appears in the record.

The situation was complicated by the fact that the five-year period for trial had almost passed, and it was not suggested by counsel for the appellants here that they would be willing to waive that limitation if given time to demur or move to strike or to answer. At the instance of the court, and as a condition to allowing the amendment, counsel for the plaintiff stipulated that all matters contained in the amended complaint should be deemed to be denied. Some suggestion is made that no opportunity was given appellants to plead the alleged bar of the statute of limitations to the third cause of action, but the record is silent with respect to any request made by the appellants for leave to add that special defense to their answer. Furthermore, in the opinion of this court, even if such demurrer had been interposed it would not have been sound, because the basic claims made in the second amended complaint were not changed in any important particular; the third cause of action in the second amended complaint as amended was not actually a new claim but only a differing statement of the claims previously contained in the pleading.

Counsel on the firing line in an actual trial must be prepared for surprises, including requests for amendments of pleading. They cannot ask that a judgment afterwards obtained be set aside merely because their equilibrium was slightly disturbed by an unexpected motion. In order to reverse a case on any such ground there must be a showing that actual unfairness or obvious prejudice has resulted from the allowance of such an amendment, and there has been no such showing in this case. The court acted within proper limits of discretion in allowing the amendment.

The pretrial conference order in the case was not itself specifically amended after the amendments were allowed to the second amended complaint. California Rules of Court, rule 216* provides in part as follows:

"When filed, the pretrial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice."

The intermediate appellate courts of this state have held that the foregoing rule does not prevent the trial court from

*Formerly Rules for the Superior Courts, rule 8.8.

granting permission in a proper case to amend pleadings after the filing of the pretrial conference order, and, further, that the mere amendment of the pleadings in and of itself is to be considered also as an amendment of the pretrial conference order. (*Wickman* v. *Opper*, 188 Cal.App.2d 129, 134 [10 Cal. Rptr. 291]; *Ragusano* v. *Civic Center Hospital Foundation*, 199 Cal.App.2d 586, 590 [19 Cal.Rptr. 118]; *Jones* v. *Burgermeister Brewing Corp.*, 198 Cal.App.2d 198, 203 [18 Cal.Rptr. 311]; *Atkins* v. *Atkins*, 177 Cal.App.2d 207, 210-211 [2 Cal. Rptr. 104]; *Rocky Mountain Export Co.* v. *Colquitt*, 179 Cal. App.2d 204, 206-207 [3 Cal.Rptr. 512]; *Beab, Inc.* v. *First Western Bank & Trust Co.*, 204 Cal.App.2d 680, 685 [22 Cal.Rptr. 583].)

While this leaves the authority of the pretrial conference order in a somewhat unsatisfactory state (see *People* ex rel. *Dept. of Public Works* v. *Valley Drive-In Theater Corp.*, 206 Cal.App.2d 309, 314, 316 [23 Cal.Rptr. 626]), we shall follow these precedents and hold that the pretrial conference order in this case was amended through the amendment of the pleadings to the extent that any new matter in the amendments deemed denied by stipulation of the parties would constitute additional issues to be tried. However, in connection with any future last-minute amendments of the pleadings, we suggest that it would be advisable for counsel also to move for an amendment of the pretrial conference order so that the advantages of the pretrial conference in clearly defining the issues and in eliminating unnecessary and time-consuming allegations of fact might be preserved.

Numerous points on appeal are made by each of the two groups of appellants. Some of them are unavailable for the following reason: in this case each of the defendants is charged with liability on three separate theories, express warranty, implied warranty and negligence; the jury brought in a general verdict, and under the rule of *Gillespie* v. *Rawlings*, 49 Cal.2d 359 [317 P.2d 601], the inquiry to be made by this court is whether or not there is ample evidence to justify the verdict as to each of the defendants under any one of the three theories. If the answer to this query is affirmative as to all defendants, our task would be ended as to the ascertainment of liability, and we would not have to concern ourselves with whether or not the other theories of liability were satisfactorily proven as to each defendant. This in turn would make numerous claimed errors irrelevant and immaterial. This rule may be stated as follows: Where

several counts or issues are tried, a general verdict will not be disturbed by an appellate court if a single one of such counts or issues is supported by substantial evidence and is unaffected by error, although another is also submitted to the jury without any evidence to support it and with instructions inviting a verdict upon it.

In *Gillespie* v. *Rawlings, supra,* 49 Cal.2d 359, the plaintiff was injured while riding in the car of the defendant and she sued on alternative theories: first, that she was a passenger for compensation seeking damages for ordinary negligence, and second, that she was a guest and that the defendant was guilty of wilful misconduct. Both of these theories were submitted to the jury with instructions which invited a verdict for the plaintiff on either; the plaintiff was awarded a verdict. On appeal the Supreme Court held that there was, as a matter of law, no evidence of wilful misconduct. Therefore, the instructions had invited the jury to return a verdict on a ground that did not exist as a matter of law, and as the verdict was general, there was no means of knowing whether it had been properly agreed upon. But the judgment was nevertheless affirmed, because the evidence was deemed sufficient to support a finding that compensation had been given and that the defendant had been negligent. This holding was followed by the opinion of the Supreme Court in the recent case of *Tucker* v. *Landucci,* 57 Cal.2d 762, 766 [22 Cal.Rptr. 10, 371 P.2d 754], where it is said:

"Under the circumstances of the case at bench, as in *Gillespie* (p. 369 [6] of 49 Cal. 2d), any error in submitting to the jury the issue of wilful misconduct could not have prejudiced defendant. Consequently no useful purpose would be served by determining whether, as contended by defendant, such submission actually did constitute error in the light of the evidence presented by the parties."

This rule is in accord with numerous appellate court decisions. Thus, in *Moss* v. *Coca Cola Bottling Co.,* 103 Cal.App.2d 380, 384 [229 P.2d 802], it is stated: "Since we have concluded that there is sufficient evidence to sustain the verdict and judgment for plaintiff on the negligence count, it is unnecessary to discuss the alleged defects in respect of the second count for breach of warranty. As noted above, the jury returned a general verdict for plaintiff."

And *Rather* v. *City & County of San Francisco,* 81 Cal. App.2d 625, 636 [184 P.2d 727], holds: "It is settled law that 'a general verdict imports findings in favor of the prevailing

party on all material issues, and if upon such a verdict one issue alone is sustained by the evidence and is not affected by any error, the want of evidence to sustain the finding on the other issues or any errors committed in regard to them cannot be prejudicial.' (2 Cal.Jur., p. 1029. See, also, 24 Cal. Jur., p. 885.)''

In an opinion written by Mr. Justice McComb in *Shields* v. *Oxnard Harbor Dist.*, 46 Cal.App.2d 477, 491 [116 P.2d 121], it is said: ''A general verdict imports findings in favor of the prevailing party on all material issues and, if there is substantial evidence to sustain a verdict on one count which is unaffected by error, the fact that there is not sufficient evidence to sustain the necessary findings of fact upon another count to support a verdict, or that there have been errors in connection with such other count, will not justify a reversal of the general verdict (*Hume* v. *Fresno Irr. Dist.*, 21 Cal.App.2d 348, 356 [69 P.2d 483] ; *King* v. *Schumacher*, 32 Cal.App.2d 172, 179 [89 P.2d 466] ; see also 2 Cal.Jur. [1921] 1029).''

The rationale of this holding may perhaps be traced back to *Estate of Hellier*, 169 Cal. 77, 83 [145 P. 1008], where it is said: ''The contestant, defending against the note, had the right to set up inconsistent defenses and offer evidence in support thereof. Upon demand of the claimant the court might have submitted special issues to the jury, if evidence in support of inconsistent issues had been introduced. But he made no such demand. He was apparently satisfied to take his chances upon a general verdict. The verdict being against him, he cannot now be heard to complain. Where several issues are tried and submitted to the jury, the general verdict must stand, if the evidence upon one issue alone is sufficient to sustain the verdict. (*Crossett* v. *Whelan*, 44 Cal. 200 ; *In re Sanderson*, 74 Cal. 199, 208 [15 P. 753] ; *Verdelli* v. *Gray's Harbor Commission Co.*, 115 Cal. 517, 525 [47 P. 364, 778].)''

Although this rule has been sharply criticized (1 Stanbury, California Trial and Appellate Practice, § 622, ''The Rule of *Gillespie* v. *Rawlings*,'' pp. 681 et seq.), it is binding upon this court (*Auto Equity Sales, Inc.* v. *Superior Court*, 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937]), and must be applied to the contentions on appeal in this case. ▉ Thus, if we determine that the evidence is sufficient to hold Burchell liable on an express warranty, it makes no difference whether he is or is not also liable on the theory of implied warranty or negligence, and if the evidence is sufficient to hold Muller & Murphy on a theory of negligence, it

does not matter whether they are also responsible on a theory of express or implied warranty.

Unquestionably the evidence already referred to is sufficient to justify the verdict against Burchell on a theory of express warranty. Three-quarters of the vines were not in good growing condition, and this gave rise to a cause of action on the express warranty. Burchell contends on appeal that there is no sufficient evidence of reliance by plaintiff upon this warranty. This contention cannot be upheld. The printed agreement accompanied the vines themselves on the delivery and was accepted by Posz's representative at the same time the vines were received. This express printed warranty was in line with the previous understanding between the parties. It is also in conformity with the usual and normal method of warranting goods sold under varied conditions, and the jury's determination that the warranty was made and accepted cannot be disturbed.

With respect to Muller & Murphy, there was ample evidence to justify a jury's determination that they were negligent in and about the storage, transportation and delivery of the vines. In the first place, they put the vines in cold storage prior to delivery for a number of days on the theory that this would not harm them; that they were not satisfied of the correctness of this conclusion is illustrated by the conducting of experiments with respect to cold storage after the event and by the further fact that they have never subsequently used cold storage for the purpose. Furthermore, the record shows that the nature of the container used in delivery of vines has been completely changed since that year to preserve the moisture content about the vine roots. It was the opinion of a number of witnesses that the plants died because of lack of proper moisture about their roots. This could have happened through improper irrigation by Mr. Posz's staff, but it also could have happened through improper storage and wrapping of the roots and the failure to keep them moist by Muller & Murphy in connection with their handling and delivery. This conclusion is reinforced by the fact that the berry vines planted the following year under basically identical conditions, apart from the alleged negligent acts of Muller & Murphy, grew successfully. Muller & Murphy's contention that they owed no duty to refrain from negligence in the circumstances is wholly without merit. The agreement among all concerned that they were to dig, store and transport the vines to Colusa County clearly provided the duty for the

exercise of due care by them. The jury had ample evidence upon which it could legitimately base a finding of negligence and liability on the part of Muller & Murphy.

Under the *Gillespie-Rawlings* rule, the proof justified a finding of liability as against all of the defendants. Many of the well-briefed points raised by the respective appellants are interesting from the standpoint of abstract law, but as their decision can make no difference in the final outcome of this case we shall not discuss these theoretical matters, but shall restrict ourselves to a discussion of those questions which have a direct bearing on the efficacy of the appeals.

▆▆▆ Defendants Muller & Murphy contend that plaintiff's action against them is barred by reason of the failure of plaintiff to file a counterclaim in the municipal court action by which they sought to recover the balance due on the sale of vines in the year following the planting of the original berry plants. They urge that under section 439 of the Code of Civil Procedure, reading as follows: "If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor," Posz was barred from bringing the instant action against Muller & Murphy because he did not assert the claim in the earlier suit. The question turns on whether both cases arose out of the same transaction, and the answer is that they did not. Plaintiff's claim for damages against Muller & Murphy on a theory of negligence accrued in the spring of 1954. The sale in the following year of 33,000 vines was the basis for defendant's action in the municipal court proceeding. The trial court correctly held that the two claims were separate transactions within the meaning of section 439 of the Code of Civil Procedure.

▆▆▆ Defendant Burchell urges that plaintiff's instruction number 35 was prejudicially erroneous:

"In the present case, evidence has been introduced which establishes beyond doubt that many of the boysenberry vines obtained by plaintiff by or through defendants did not grow and did not produce a crop for market. If you find that the defendants, or any of them, warranted that these plants would grow, or would be in growing condition at the time of their delivery to plaintiff, or would be suitable for growing a crop on plaintiff's land, or that they made any other representation or promise which amounted to a warranty to the effect that

the vines would grow when planted by plaintiff, then it is your duty to determine whether the failure of the plants sold to plaintiff to grow when planted by him resulted from or constituted a breach of that warranty or warranties, 'or from some other reason or cause.' ''

This instruction is to the effect that if the jury should find that an express warranty of the nature outlined was made by any of the defendants, it would be the duty of the jury to inquire whether such warranty was in fact breached. As the complaint charged all of the defendants with liability under an express warranty theory and there was a conflict of evidence as to what the warranty, if any, made by Muller & Murphy was, the instruction was proper. In any event it was not harmful to Burchell. After all, Burchell did, in fact, give an express warranty that the vines were ''in good growing condition,'' and the several alternatives mentioned in the instruction did not markedly depart from the general meaning of such a warranty. It could not be construed, as Burchell suggests, to be an absolute guarantee that all vines so sold should thrive and produce.

Both appellants urge in their briefs that the plaintiff is not entitled to recover, because he did not give to the seller the required notice of breach as prescribed by section 1769 of the Civil Code. However, upon the oral argument of the case counsel for Burchell admitted that a sufficient notice had been given to him and consequently the point must be considered withdrawn by him. Insofar as Muller & Murphy are concerned, the point is immaterial in view of their liability on the ground of negligence.

Muller & Murphy claim that instructions on the subject of negligence were erroneous. They are estopped to urge that the giving of BAJI 101 is incorrect, for the defendants themselves requested an identical instruction (4 Cal. Jur.2d, Appeal and Error, § 469, p. 301; § 557, pp. 422-423). And their suggestion that additional instructions on the subject were not given is not available to them, as they did not request such instructions (3 Cal.Jur.2d, Appeal and Error, § 161, pp. 643-646).

The other points raised by the appellants, with one exception, are disposed of by the rule in the *Gillespie-Rawlings* case. The exception involves the question of damages.

The court instructed the jury, at the request of plaintiff, in part as follows:

''If, adhering to the Court's instructions, you should find

that plaintiff is entitled to a verdict against defendants, or any one or more of them, it will then be your duty to award plaintiff such amount of damages as will compensate him reasonably for all detriment suffered by him and of which the defendants' breach of warranty or warranties or negligence as found by you was a proximate cause.

"Should your decision be to award damages to the plaintiff, PAUL POSZ, in arriving at the amount of the award, you shall determine each of the items of claimed detriment which I now am about to mention, provided that you find it to have been suffered by him and as a proximate result of defendants' negligence or breach of warranty upon which you base your finding of liability;

"(1) Each item of direct expense for the year 1954, 'attributable to the boysenberry vines that failed to grow,' and

"(2) Loss of profits or income not to extend beyond 1956 'attributable to the boysenberry vines that failed to grow'; . . ."

This instruction departs completely from the well-established rule in California for the ascertainment of damages in connection with fruit trees or berry vines. ▇▇▇ The measure of damages with respect to nursery stock is the difference in reasonable market value between the land as planted to the vines actually delivered by the producer or seller and the land if planted to the vines as warranted. (*Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313, 319 [168 P. 343]; *Germain Fruit Co.* v. *J. K. Armsby Co.*, 153 Cal. 585, 590 [93 P. 319]; and *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, 420 [57 P. 412, 42 Am.St.Rep. 125].) The rule is thus stated in 36 California Jurisprudence 2d, Nurseries and Nursery Stock, section 5, page 576: "The proper method of ascertaining the damages, when the discovery of the breach cannot be made until after the nursery stock is planted, is to take the difference between the value of the land as planted with the stock delivered and what the value of the land would have been if planted with stock of the kind warranted." (See also 161 A.L.R., p. 587 et seq.; *Montgomery* v. *Locke*, 72 Cal. 75, 77 [13 P. 401]; 14 Cal.Jur.2d, Crops, § 45, pp. 617-618.)

▇▇▇ Where damage for loss of vines is measured by the amount of depreciation in the value of the land as planted, there is no warrant for allowing further damages for loss of crops which might have been produced in the future because the reduced value of the land necessarily includes the future value of lost crops. (*Hill* v. *Morrison*, 88 Cal.App. 405, 408

[263 P. 573].) ▮▮▮ Special damages properly pleaded, such as the cost of consolidating the growing vines after the discovery of the extensive death of the plants, may also be recovered. ▮▮▮ But the cost of the vines and the expense of originally preparing and planting the land are not recoverable as special damages, as these items are covered by the general measure of damages above referred to. Nor would interest on borrowed money be recoverable, as claimed by respondent.

▮▮▮ Respondent admits error as to damages, stating in his brief (pp. 149-150) : ''It must be admitted that the theory of damages contended to be proper by appellants in this instance is supported by the authorities and that the jury was, in fact, erroneously instructed as to the proper measure of damages to apply.'' He argues, however, that the error committed by him in proposing the instruction on damages hereinabove quoted and in producing evidence to support it was excusable because the defendant Burchell successfully demurred to his first amended complaint, although that pleading was in fact based in part upon a correct theory of damages. Afterwards, the plaintiff failed to plead or prove damages in accordance with the requirements of law. Are the defendants estopped to urge error by reason of this fact? We think not. In the first place, defendants Muller & Murphy did not join in the demurrer; secondly, the demurrer may have been sustained on other grounds, the reasons for the ruling not being contained in the record; and thirdly, the error of plaintiff in urging a fallacious measure of damages and making improper proof over the repeated objections of appellants cannot be shifted to the opposing parties. A plaintiff owes a duty to present his case in accordance with law, and he can not justify a major mistake on his part by saying he was misled by the erroneous views which one of his opponents held at an earlier stage of the litigation.

The judgment is reversed solely as to damages and is otherwise affirmed; and the cause is remanded to the superior court for retrial as to the question of damages only.

Stone, J., concurred.

Brown, J., being disqualified, did not participate.