[Civ. No. 7088.   Fourth Dist.   June 24, 1963.]

H. L. ARTHUR, Plaintiff and Respondent, v. NEW HOUSE BUILDING CORPORATION et al., Defendants and Appellants.

James A. Poore for Defendants and Appellants.

Taylor, Smith & Williams and James A. Smith for Plaintiff and Respondent.

CONLEY, J.*—The plaintiff obtained a decree for the foreclosure of a mechanic's lien on certain real property in San Bernardino County because of the furnishing by him of concrete slabs, floors and concrete foundations for residences being erected on the premises described, of a total reasonable value of $15,600, of which the sum of $8,705 was concededly paid, leaving a balance due of $6,895. The defendants, New House Building Corporation, Truman Enterprises, Inc., and Truman Browne, in their answer admitted that the plaintiff had performed certain work for them but denied that he had fulfilled his contract in conformity with its terms and denied that they were indebted to plaintiff. The other defendants, Continental Casualty Company and Great American Indemnity Company, were sued on the bonds which they had furnished.

*Assigned by Chairman of Judicial Council.

The defendants other than the surety companies counterclaimed on the grounds that plaintiff allegedly did not perform his contract, that the concrete work done by him was defective and would have to be torn out and replaced and that certain plumbing installations imbedded in the concrete would be ruined; the counterclaim lists numerous items of alleged damage, including $4,371 for rough plumbing allegedly rendered useless by the failure of the plaintiff to comply with his contract, the sum of $5,500 by reason of the increase in cost of installing the concrete slabs called for by the plans and specifications and for the further sum of $300 per unit for each of 20 houses, causing an alleged additional damage of $6,000.

The pretrial order in the case shows that the following facts were admitted by the pleadings: (1) that Truman Enterprises, Inc., a corporation, is the owner of the real property described in the complaint; (2) that during the year 1957 the defendant owner began the erection of certain residences on specified real property; (3) that plaintiff began operations under his contract with defendant New House Building Corporation and finished said work in accordance with his contention that he had complied with his contract in October of 1957; (4) that New House Building Corporation originally agreed to pay plaintiff $15,600 for the labor and materials to be furnished under the contract; (5) that payments were made to plaintiff on the basis of the contract price of $650 per unit for 24 units, said payments being $5,000 on November 22, 1957, and $3,705 on November 27, 1957.

It must be repeated, as it so often is in appellate decisions, that this court has a strictly limited right to review the evidence received in the court below. We can not try the case anew; we have nothing to do with weighing the evidence or with resolving conflicts therein or with judging the credibility of witnesses. In *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183], the Supreme Court effectively summarizes the necessary duty and outlook of an appellate court as follows:

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial

evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.''

The first question to be determined is: What was the contract actually entered into between the parties at the inception of their relationship? The defendants claim that the written form of contract with the specifications attached to their amended answer and counterclaim as Exhibit A was in fact the agreement reached between the parties; however, this contract was never signed by the plaintiff, and he contends that while he and the defendants' representative, a Mr. Don Boyd, did talk about the proposed written contract, which was not signed, and the attached specifications at the inception of the business relationship, the oral general agreement contained a very distinct modification of the proposed writing in this, that Mr. Boyd specifically stated and agreed that the job would be done pursuant to City of Rialto inspection only; respondent testified that he calculated his bid on the job in accordance with this oral agreement and the building requirements of the City of Rialto, and therefore had a right to modify the proposed specifications accordingly.

The record shows that in March of 1957 Mr. Boyd, as general superintendent for the defendant New House Building Corporation, telephoned respondent and had him come to his office in the City of Rialto. At the time the plans and specifications were discussed, Mr. Boyd asked Mr. Arthur to give him a figure on the cement work, specifically stating that the job would be done under City of Rialto inspection only. Respondent calculated his bid on the job in accordance with the building requirements of the City of Rialto and therefore modified the specifications with respect to the footing under the garages or carports, leaving out that footing or making a modification which somewhat weakened the structure at that point and resulted in nonconformity with the requirements of Veterans Administration and F.H.A. financing. Sometime later respondent submitted a proposal to Mr. Boyd, and after further negotiations agreed to do the work on the 24 residence units in Tract 4433, located at South and Willow Streets in Rialto, County of San Bernardino, at $650 per unit. These cement slabs were in fact constructed on lots 23 through 26, 1 through 12, and 15 through 22. It is contended by the plaintiff that the unsigned ''proposal and contract,'' a copy

of which is attached to defendants' amended answer and counterclaim as Exhibit A, was never agreed to by plaintiff, but that it was modified orally as already stated.

Respondent began work on the first four of the 24 units in June of 1957. Mr. Boyd, who had worked for Truman Browne since 1944-45 and was general superintendent for the New House Building Corporation, was in charge of the job and supervised the work that plaintiff did. During the month of October 1957 respondent completed the remaining 20 units. Mr. Boyd oversaw the pouring of the cement, and respondent followed Boyd's directions throughout in how the work was to be done. No complaints were registered by Boyd during the time that the operation was being carried forward. In each instance, according to his own testimony, respondent dug the foundations and poured the concrete strictly in accordance with requirements of the City of Rialto; thereafter the 24 slabs were inspected and passed by the city building department.

After the completion of the work in October 1957, plaintiff was paid $5,000 on account on November 22 and $3,705 on November 27. The record shows that subsequently the respondent talked with Boyd on several occasions, on each of which he was promised a payment of the balance due. Also, Mr. Bill Kaye, an employee or associate of Truman Browne, stated to him that all of the subcontractors on the job would be paid, but that as Mr. Browne was having domestic difficulties and his wife had most of the property tied up, they would have to try to find some money and would do their best to secure it. During this period no complaints about the work which he had done were made to the plaintiff. On March 13, 1958, plaintiff recorded his mechanic's lien in the office of the San Bernardino County Recorder. It was not until the month of June 1958, in a letter from defendant New House Building Corporation, signed by Truman Browne, that any complaint was made to the plaintiff with respect to the nature or quality of his work. This letter was written approximately nine months after the work was completed. The trial judge remarked, "I am of the opinion that plaintiff's work was entirely satisfactory to the defendants until this lawsuit was contemplated."

The trial court believed that the defendants failed in their proof that the unsigned form of written contract and specifications control the case. The court found that there was substantial compliance by the plaintiff with the agreement

which he had made for doing the concrete work and awarded judgment accordingly.

Much is made by appellants of the testimony of one Richard C. Montgomery, who took measurements after the work at the scene of the operation. The trial judge noted that it was difficult under such circumstances to make certain as to the exact bottom of the concrete work where the slabs were put in; he states in his memorandum opinion that he believed the testimony of the witness Larson that the trenching and forms were checked prior to the pour as being the most reliable testimony as to the dimension of the footings.

Summarizing, there was ample evidence in the record to support the findings of the trial judge, and we are bound by this testimony even though there was conflicting evidence which might have led the trier of fact to an opposite conclusion.

■ Objection is made by the appellants to the court's ruling that it would not permit the civil engineer Dewitt C. Butz to testify that there was no ambiguity in the plans and specifications and as to the common practice in that field. At first the court indicated that it would allow the defendants to put on this testimony but later said, "I'm going to reverse myself on this ruling. If we open this subject up we will be here another three or four days, and it is a subject which I'm confident is not material. The objection will be sustained." However, there was no motion to strike the evidence already given by Mr. Butz, and the ruling therefore did not result in any change of the record as it stood at the time. No additional questions on this subject were asked by counsel for the defendants; they are not in a position to urge error as to unasked questions. ■ It should be noted further that whether or not there is an ambiguity in writings is primarily a question for decision by the court and not a matter for expert opinion, although there have been times when the court has in technical fields permitted an expression of those skilled in the particular line of work to aid the court in reaching a conclusion on this matter.

■ The next evidentiary ruling complained of is the sustaining of the objection to the offered testimony of Mr. Boyd that the requirements of the City of Rialto did not contemplate the construction of a waterproofing membrane in the concrete slabs. Inasmuch as the Veterans Administration and F.H.A. specifications required the insertion of such mem-

brane, and the plaintiff admitted that he did insert such membrane in the slabs in question, the purpose of the solicited evidence was to show by inference that he must have known that the plans and specifications contemplated F.H.A. financing or V.A. financing rather than financing based on compliance only with the building requirements of the City of Rialto. The ruling was not erroneous. The Building Code of the City of Rialto was received in evidence by the court, and its interpretation would be a matter for the court to make rather than for Mr. Boyd.

A third ruling on the evidence which is objected to was the sustaining of an objection to a question directed to the defendant Truman Browne as to what would have been the reasonable market value of a home in the location where these subdivision houses were being built with conventional financing. Mr. Browne had testified as to his opinion of the reasonable market value of these homes, and his answer to the question objected to would have been pure speculation. There was no proper foundation laid for the question as to the qualifications of the witness; there was no error in the ruling.

Some suggestion is made that the court did not make sufficiently full findings with respect to the claims of damages made on the counterclaim. However, in view of the award of damages to the plaintiff, which were net figures, the inferential finding with respect to the counterclaim was unquestionably a negative one.

Objection is made to a question which the trial judge asked of the witness Larson, with respect to the ambiguity of the plans and specifications. It is, of course, not only the right but the duty of a trial judge when he believes that he will aid in bringing out the truth or preventing misunderstanding to ask appropriate questions, and this is particularly true when the judge is acting without a jury. (*Bell* v. *Moloney*, 175 Cal. 366 [165 P. 917].) It may well be observed, however, that the court was not consistent in asking this question of one expert witness when it had shortly before prevented an opposing expert witness from answering a similar question. However, the conclusive reply to the objection is twofold: first, it was for the court to determine whether the plans and specifications were ambiguous, if the court should find that such plans and specifications in fact constituted part of the contract between the plaintiff and defendants; if the specifications did not actually form part of the

contract, the question would be immaterial; second, the defendants did not object to the court's interrogation of the witness or move to strike the answer, and by such failure defendants waived any error or impropriety. (*Perry* v. *McLaughlin*, 212 Cal. 1, 6 [297 P. 554].)

Finally, Truman Browne contends that the judgment against him personally was not justified in that the pretrial conference order sets forth the fact that it was not admitted that Truman Browne had an interest in the property individually. However, it is clear that after the pretrial conference the filing of an amended answer and counterclaim was permitted by stipulation, and this pleading failed to deny that Truman Browne is an owner of the real property involved as alleged in paragraph II of plaintiff's complaint. Every material allegation of a complaint not controverted by an answer must be taken to be true. (Code Civ. Proc., § 462; *Rembold* v. *City & County of San Francisco*, 113 Cal.App.2d 795, 796 [249 P.2d 58].) In paragraph II of defendants' amended answer and counterclaim there is a specific admission of each and every allegation not denied therein, and this admission necessarily includes a concession that defendant Truman Browne was one of the contractors securing the labor and materials from plaintiff and that he was one of the owners of the land. The filing by stipulation and court order of an amended pleading is equivalent to an amendment of the pretrial conference order. (*Posz* v. *Burchell*, 209 Cal.App.2d 324, 334-335 [25 Cal.Rptr. 896].)

The findings of the trial court and the judgment based thereon are supported by ample substantial evidence.

The judgment is affirmed.

Griffin, P. J. and Brown (Gerald), J., concurred.