[Civ. No. 4553. Second Appellate District, Division Two.—January 19, 1928.]

FRED HILL et al., Respondents, v. F. P. MORRISON, Defendant; W. H. GLASS et al., Appellants.

Henry M. Willis and C. A. Ballreich for Appellants.

Byron Waters and U. F. Lewis for Respondents.

STEPHENS, J., *pro tem.*—This cause is based upon an alleged damage to fruit trees by cattle belonging to, or controlled by, the defendants W. H. and W. W. Glass. The trial court entered an order of nonsuit as to all other defendants and they are not before this court. The trees, about 850 in number, are in a mountainous orchard in San Bernardino County which is entirely surrounded by the area known as Angeles National Forest. The action was tried before the court without a jury and the judgment was awarded against said W. H. and W. W. Glass for the sum of $1,400 with costs, but, after motion for new trial, which was denied, the damage judgment was reduced to the sum of $900. Said last-named defendants, hereinafter referred to as defendants or appellants, appealed, specifying several numbered points upon which they rely for a reversal of the judgment.

Point No. 1: "Judgment should be reversed for failure of plaintiffs to prove that the lands trespassed upon were entirely enclosed by a substantial fence or other enclosure."

The finding upon which appellants base the above point is as follows:

"That said orchard is and at all times mentioned in said complaint has been enclosed with a 4-barbed wire fence except where there is a trail, which fence together with said brush and the lay of the land thereat formed a substantial enclosure of said orchard."

Appellants point out that there is a seeming inconsistency in the finding that there is a trail through the brush and yet the brush together with the lay of the land thereat forms a part of a substantial inclosure. They also argue that the expression "which fence together with said brush and the lay of the land thereat formed a substantial enclosure of said orchard" is a pure conclusion and no part of a finding of fact. Therefore, there is no finding of fact from which a conclusion could be drawn that the orchard was substantially inclosed. Reading the finding as a whole, as of course

it should be read, we do not find it to be fatally defective. The court finds as a fact that partially around this orchard there is a fence and partially around it there is a thick brush, and that as a fact the fence and the brush form a substantial inclosure. And this notwithstanding there is a trail through the brush. The circumstance that the court finds that the fence and brush form an inclosure is to be taken that the trail was not such a trail as to preclude the finding that the fence, the brush and the lay of the land thereat "formed a substantial enclosure." Without quoting extensively from the transcript it is sufficient to say that the evidence supports this construction of the finding and supports the finding in its entirety. We, however, quote the following from the testimony of R. H. Stetson, one of the plaintiffs in the case:

"Q. And the land described in the complaint has been in the possession of the plaintiffs how long? A. About ten years, nearly eleven years now; not quite. Q. In the months of February, March and April 1922 was the tract fenced or unfenced? A. Fenced. Q. What kind of a fence? A. Mostly a four barbed wire fence with posts 12 feet apart. A portion of the old fence that was on the place had a three barbed wire fence; and the north portion—the north line of the place is very thick and heavy brush and it was never necessary to have a fence there; the stock never penetrated it, or never did to my knowledge. Q. That is to say the thickness of the brush furnished the enclosure for that part? A. Yes sir, enclosed it."

It is as easy to conceive of a fence so constructed or in such bad repair that it would not aid in substantially inclosing the ground as it would be to conceive of a brush of such tender qualities, or a lay of the land so even, that they would not aid in inclosing the orchard. But the court finds these three elements present and that they constitute a substantial inclosure. It would indeed be a refinement to require in the finding the details of the fence construction posts, space between wires, etc., the density and the resisting power of the brush and the grade of the land. The evidence must be looked to for these details.

The briefs of both parties very carefully analyze the law as to whether or not it is necessary to a recovery by plaintiffs that the orchard area, situated as it is and where it is, must have been substantially inclosed. Appellants contend

that if the orchard was not within an inclosure the plaintiffs cannot, as a matter of law, recover. But we need not consider this point, as we have determined that the trial court's finding that the orchard was substantially inclosed is proper in form and supported by the evidence.

Point No. 2: "The decision is against law for the reason that the trial court failed to make a finding on material issues, to wit, the loss in value of the lands or trees thereon resulting from the injuries found done to the trees, and the loss of fruit which the trees would have produced if such damage had not been done."

Appellants contend that the finding that the defendants permitted their cattle to break through the plaintiffs' fence and to go into plaintiffs' orchard, and to bite, eat, break, horn, damage, and destroy trees to plaintiffs' damage in the sum of $1,400 (later reduced to $900) is a naked conclusion and does not suffice to constitute a finding as to the extent of the injury to or the loss in value of the lands or the trees thereon resulting from such injuries.

There is no claim or intimation in this case that the plaintiffs are asking for damages on a sentimental ground. On the contrary, the evidence responds to the allegation in the complaint referring to damage to the trees and only to the theory of a pecuniary loss. Fruit trees, under this theory, are valuable only because they produce valuable fruit. This value may be considered by a direct evaluation of the fruit itself or as an added value of the land with the fruit-producing trees thereon. The evidence adduced was that each tree, according to its age, condition and kind, was worth a specific sum; that those destroyed were thereafter worth nothing, and that those injured were worth sums proportionate to their normal condition. This worth, of course, related to the added worth of the ground with the trees, over the worth of the ground without the trees, and was a proper method of determining the damage. (Sedgwick on Damages, 7th ed., 276; *Montgomery* v. *Locke,* 72 Cal. 75 [13 Pac. 401]; *Shearer* v. *Park Nursery Co.,* 103 Cal. 415, at page 420 [42 Am. St. Rep. 125, 37 Pac. 412].) Since the method used considered the value of the trees as fruit producers, it follows that an added sum for the crop itself would have been counting the damage twice, and hence the allegation in the complaint referring to fruit as an added damage is pure

surplusage. This allegation adds nothing to the complaint and the defendants have not been prejudiced in any way by the failure of the findings to cover it. Being an immaterial allegation, no finding thereon need be made.

■ Point No. 3–A: "The evidence is insufficient to justify the decision fixing the amount of damage in the sum of $1400.00 or in the reduced sum of $900.00."

As may be seen from the evidence quoted and further from our comment under point No. 4, we regard the testimony relating to the method of measuring the damage as proper. Under this method one of the orchardists figured the damage slightly less than $900, and the other as very much more than that figure. It is plain that there was substantial testimony upon which the trial court could arrive at the amount fixed in the judgment.

■ Point No. 3–B: "The evidence is insufficient to justify the decision that the injuries to plaintiffs' property were not in anywise done or caused by the weight of snow."

R. H. Stetson, one of the plaintiffs, testified that he had lived in the neighborhood of the orchard for many years; that he went up to the place in the early spring of 1921 and found six head of defendants' cattle in the orchard; that he observed the trees eaten, broken and limbs twisted and broken, and that the damage was done by cattle; that never before had he sustained any considerable damage to his orchard trees except through a late frost; that when he examined the broken limbs he found the breaks comparatively recent; that around the broken and browsed trees there were many cattle tracks; that the spring buds had been browsed off up to six or seven feet from the ground. Another witness, Selover, also saw two of defendants' cattle in the orchard in March, 1921. This evidence was competent to support the finding criticised.

■ Points Nos. 3–C and 3–D: "The evidence is insufficient to justify the decision that the injuries and damage to plaintiffs' property were done by the cattle of defendants and not by cattle of other persons."

The discussion under 3–B of this point covers this subdivision of point 3 as well. We will add that, while it may have been possible that other cattle joined in causing the damage, there is no testimony to that effect and the testimony referred to was competent evidence upon which the trial court could have based the above referred to finding.

■ Point No. 4: "The court erred in overruling appellants' objection to the question put to the witnesses Ford and Pendleton, calling for their estimate of the amount of damage to the trees in question."

Ford and Pendleton were called as orchard experts to give in detail their experiences, and were allowed to testify. Ford was asked: "Now taking all these different elements into consideration, you may state what you consider to be the amount of damage to these trees." To which the objection was made that the question asked for a conclusion on the ultimate fact and that no foundation had been laid. The circumstances as to Pendleton may be considered the same as those applying to Ford for all practical purposes. Our comments under appellants' point No. 3 will be in mind while considering this point, without specific reference. In the cross-examination, counsel for defendants asks the following questions and Mr. Ford gives the following answers:

"Q. Mr. Ford, where did you obtain the eight dollars valuation that you placed on the Rome Beauty trees of that age? A. Well, that is what I would consider a fair valuation of the Stetson Orchard, considering the age of the tree and the location and the variety of the tree. Q. Did that eight dollars per tree include the land value that it is growing in? A. Well, I would say that it would be a part of the land value—that is, you really might calculate the land and the trees growing together, but the trees have, I would consider, have a value themselves, of eight dollars."

It requires no argument to arrive at the conclusion that the witness was in effect testifying that the land with these trees was worth $8 more per tree than without them, and was worth proportionately less through the extent of their injury. Both witnesses qualified as experts to the satisfaction of the trial judge, and we find no abuse of discretion therein, as we should have to do to sustain the objection as to qualification. We hold that the overruling of the objections was not error and that the bases of the answers received were clarified and squarely brought within the proper admeasurement of damages in this case by the questions and answers quoted herein.

It is further contended by appellants that the estimates of damage are gross instead of net, but sufficient of the

testimony has been referred to and quoted to show that it does not support this view.

The judgment is affirmed.

Works, P. J., and Craig, J., concurred.